IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHELLIE CAHALL and WILLIAM CAHALL, | ) ) ) Civil Action No. 14 - 1246 |
| Plaintiffs, | ) ) Magistrate Judge Lisa Pupo ) Lenihan |
| v. | ) |
| THE OHIO CASUALTY INSURANCE COMPANY, AMERICAN FIRE AND CASUALTY COMPANY and LIBERTY MUTUAL GROUP, INC., | ) ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER ON
THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT**

I.     **SUMMATION**

For the reasons set forth more fully below, the Court concludes that Defendants' Cross-Motion for Summary Judgment (ECF No. 20) will be granted and Plaintiffs' Motion for Summary Judgment (ECF No. 16) will be denied.

First, the Court observes that it concurs with the cogent opinion of the District Court for the Middle District of Pennsylvania issued in Glazer v. Nationwide Mutual Insur. Co., 872 F.Supp.2d 396 (M.D. Pa. 2012). The insured's addition of a vehicle to an existing automobile insurance policy, as to which there is a prior properly noticed and executed

waiver of UIM benefits, does not create an obligation/requirement that the insurer re-notice or re-obtain a subsequent waiver of such coverage. In considering the Pennsylvania Motor Vehicle Financial Responsibility Law (the "PMVFRL"), it is clear that the statutory language of 75 Pa.C.S. §§1731 and 1791, governing the insurer's requisite notice/offer and an insured's optional waiver of UIM benefits, apply. And it is equally clear that the underlying/related considerations where an insured has waived UIM benefits are critically distinguishable from those addressed by case law regarding 75 Pa.C.S. §1738, pursuant to which the addition of a vehicle can trigger a requisite opportunity for the insured to waive or elect the "stacking" of *previously purchased* UIM coverage as to that *additional* vehicle.

Secondly, the Court observes that Plaintiffs cannot maintain a claim for statutory bad faith where Defendants are in fact correct in the basis of the denial of underinsured motorist coverage. Thirdly, the Court notes that Plaintiffs also cannot maintain a claim for violation of the Unfair Trade Practices and Consumer Protection Law where they have made no Complaint allegations supportive of such claim and the record contains no suggestion that they could. Finally, because the Court will grant Defendants' Motion for Summary Judgment, the question of whether each named Defendant is a proper Defendant is moot.

## II.     <u>RELEVANT FACTUAL AND PROCEDURAL HISTORY</u>

The undisputed facts include that Plaintiff Shellie Cahill ("Wife Plaintiff") was, on August 9, 2010, involved in a motor vehicle collision with James Kildoo ("Kildoo") in Lawrence County, Pennsylvania. Kildoo was insured by Nationwide Insurance and his liability limits were $50,000

per person and $100,000 per accident. After settling with Kildoo, William and Shellie Cahall ("Plaintiffs") brought an underinsured motorist ("UIM") claim against Defendants The Ohio Casualty Insurance Company, American Fire and Casualty Company, and Liberty Mutual Group, Inc. (collectively "Defendants") which Ohio Casualty denied.

Defendant Ohio Casualty insured Plaintiffs under an automobile insurance policy (the "Policy") as to which William Cahall ("Husband Plaintiff"), as a named insured, executed a waiver form that rejected UIM coverage at the time of the policy's issuance in October, 2007. During the time between execution of the waiver form and the August, 2010 accident, Plaintiffs replaced both of the original vehicles and added a third vehicle under the policy. No new waiver form rejecting UIM coverage was ever executed and, because such coverage was waived, there was no relevance as to potential elections to "stack" or multiply such coverage by the number of vehicles insured under the policy.

Plaintiffs filed their Complaint in the Court of Common Pleas of Lawrence County in early August, 2014 and Defendants removed it to this Court on September 12, 2014 (ECF No. 1). The Complaint includes counts for breach of contract as to UIM coverage, a declaratory judgment claim as to the same, a statutory bad faith claim under 42 Pa.C.S.A. §8371 expressly premised on Defendants' "reasoning and rational for denying UIM benefits" (see Complaint at ¶ 72), an Unfair Trade Practices and Consumer Protection Law ("UTPCPL") claim under 73 P.S. 201-1 *et seq*. again expressly premised on Defendants' asserted improper denial of UIM benefits (see Complaint at ¶ 82), and a loss of consortium claim by Husband Plaintiff.

Plaintiffs filed a Motion for Summary Judgment (ECF No. 16) seeking "summary judgment on [their] declaratory action" regarding entitlement to UIM coverage in the amount of $900,000 ($300,000 multiplied by three (3) vehicles) on grounds that Defendants were required "to provide them with another opportunity to reject UIM coverage and stacking" by a "natural progression of Pennsylvania case law in following the Sacket Trilogy . . . ." See Plaintiffs' Memorandum of Law in Support of Their Motion for Summary Judgment ("Plaintiffs' Memo In Support of MSJ") (ECF No. 19) at 3-4, 7. Defendants filed a Cross-Motion for Summary Judgment (ECF No. 20) asserting that (1) Plaintiffs claims for UIM benefits fail because Husband Plaintiff's waiver of UIM benefits remained effective despite the subsequent addition of a third vehicle under the policy; (2) Plaintiffs cannot, as a matter of law, maintain a statutory bad faith claim where the insurer had good cause to deny benefits; (3) Plaintiffs cannot maintain a UTPCPL claim premised on purported "misrepresentations" that are a characterization of Defendants' (legally correct) denial of UIM benefits; and (4) two of the three named Defendants should be dismissed. As more fully set forth below, this Court concurs with Defendants.

### III. GENERAL APPLICABLE STANDARDS ON SUMMARY JUDGMENT

Summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). *See also* Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, (1986).

The moving party has the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. The party opposing the motion, however, cannot rely merely upon bare assertions, conclusory allegations, or suspicions to support the claim; rather, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita, 475 U.S. at 586, and must produce more than a "mere scintilla" of evidence to demonstrate a genuine issue of material fact. *See* Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir.1992). *See also* Celotex, 477 U.S. at 324 (observing that Rule 56(e) permits a summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves).

The inquiry to be made is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." The non-moving party "must be able to produce evidence that 'when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor.'" SEC v. Hughes Capital Corp., 124 F.3d 449, 452 (3d Cir.1997) (quoting Kline v. First W. Gov't Sec., 24 F.3d 480, 484 (3d Cir.1994)). If the non-moving party fails to present evidence sufficient to establish an "element essential to that party's case, and on which that party will bear the burden of proof at trial", summary judgment is appropriate. Celotex, 477 U.S. at 322. Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c)(2).

## IV. ANALYSIS

Plaintiffs state that "the dispositive question is whether [Plaintiffs'] addition of a new vehicle to the existing policy triggered a duty on [defendants] to provide them with another opportunity to reject UIM coverage and stacking" and assert that under a "natural progression of Pennsylvania case law" the answer is in the affirmative. Plaintiffs' Memo in Support of MSJ at 3-4. As Defendants correctly summarize in their Brief in Support of Defendants' Cross-Motion for Summary Judgment ("Defendants' Brief in Support of CMSJ") (ECF No. 21) at 4-9, the applicable precedent is the Pennsylvania Superior Court's decision in Smith v. Hartford Ins. Co., 849 A.2d 277, 281 (Pa. Super. 2004), holding that, under § 1791, a decision to waive UIM benefits "carries forward until affirmatively changed". See also 75 Pa.C.S. §1791 (stating that if the insured rejects UMI benefits by execution of a notice provided by the insurer in proper content and format "no other notice or rejection shall be required" and the insured's "signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of the benefits and limits as well as the benefits and limits you have selected"); National Mut. Ins. Co. v. Merdjanian, 195 Fed.Appx. 78, 82 (3d Cir. 2006) (noting that "once an insurance applicant has been informed of the available choices for UM/UIM coverage, and opted to reject . . . such coverage in conformity with the requirements of sections 1731 . . . the insurer has no further obligation to provide noticed or rejection with regard to UM/UIM coverage").

Plaintiffs' assertions to the contrary, it is of no moment that Smith precedes opinions regarding additional waivers as to the "stacking" (*i.e.*, multiplication of UIM benefits by the

number of vehicles covered under the policy) of *elected* UIM benefits, and those decisions (the "Sackett cases" or "Sackett Trilogy") are patently distinguishable, as indeed was expressly noted by the Pennsylvania Supreme Court in one of Sackett opinions.[1]  Moreover, the case law in this area was insightfully and efficiently reviewed and applied by our sister court for the Middle District of Pennsylvania in Glazer v. Nationwide Mut. Insur. Co., 872 F.Supp.2d 396 (M.D. Pa. 2012).  This Court fully concurs with Judge Caputo's analysis and notes that it has been cited with approval, subsequent to the parties' briefings, by the Eastern District of Pennsylvania as well.  See Tolentino v. State Farm Ins. Co., 2015 WL 2208812, *4-5  (E.D. Pa. May 12, 2015) (concluding that Plaintiffs did not have UIM coverage under the applicable policy at the time of the accident and finding, in addition to validity of Rejection Form for UIM coverage despite absence of policy number on said form, that Plaintiff  "was not required to execute a new waiver of UIM coverage" as "[a] valid rejection of UIM coverage continues for the life of an insurance policy until affirmatively changed") (citing Glazer).

More specifically, Glazer involved a 2005 automobile accident in a vehicle subsequently added to a single-vehicle policy issued in 1994 when the insured (the wife-plaintiff's son) executed a valid waiver of UM/UIM coverage.  Vehicles had been removed, replaced, and added over the intervening years.  There as here the parties did not dispute the initial effectiveness of the original UIM waiver or the absence of any subsequent waivers, and the legal question posed

---

[1] See Sackett v. Nationwide Mut. Ins. Co., 919 A.2d 194,198 (Pa. 2007) ("While the conclusion in Smith was required by the relevant statutory language of Sections 1731 and 1791, the instant matter raises a different question, because Smith did not involve stacking UM/UIM coverage, or Section 1738 of the MVFRL in any way.  The addition of another vehicle to a policy *with UIM coverage* raises different concerns than those addressed by Sections 1731 and 1791.") (emphasis added).

was whether the insurer was required to obtain a new UIM waiver for each vehicle subsequently added to the policy. The Court held that the requirement for execution of a new waiver is not triggered by the addition of a vehicle, and that any requirement of a subsequent additional UM/UIM election/waiver pertains only to stacking under § 1738 *where UM/UIM coverage was purchased*, thus giving rise to the consideration of whether the insured would elect or waive multiplication of the benefit to reflect that additional vehicle (a consideration not present prior to the vehicle's addition to the existing policy).

The Glazer Court first noted that:

> Section 1731 of the MVFRL provides for the availability, scope, and amount of uninsured and underinsured motorist coverage. While the purchase of such coverage is optional, it is mandatory for an insurer to offer it. 75 Pa.C.S. § 1731(a). In order to decline such coverage, the MVFRL requires particular rejection language printed on a separate sheet "in prominent type and location" which must be signed and dated by the first named insured. *Id.* at § 1731(c.1). Failure to secure a proper rejection will result in default UIM coverage equal to the bodily injury liability limits. Id. Further, § 1791 provides a standardized form, which, if properly presented to the insured, sets up a presumption that the insured has been fully appraised of the benefits and limits of the MVFRL and that "no other notice or rejection shall be required."

872 F.Supp.2d at 400.

After noting that the Pennsylvania Supreme Court had not yet ruled on the precise question before it, and that, accordingly, the Court was required to "predict how the Supreme Court of Pennsylvania would interpret the applicable section of the MVFRL if presented with this issue", id. at 401 (citing Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir.2000)), the Glazer Court proceeded to address the plaintiffs' assertions regarding the applicability of the Supreme Court of Pennsylvania's decision and revised opinion in Sackett v. Nationwide Mut.

Ins. Co. (Sackett I), 591 Pa.416, 919 A.2d 194 (2007), *modified on reargument,* 596 Pa. 11, 940 A.2d 329 (2007) (Sackett II):

> Those decisions, however, are not readily applicable to the facts of the instant case. Specifically, those cases considered whether, under a different section of the MVFRL (§ 1738), the addition of a third vehicle to an existing insurance policy required an insured to have a renewed opportunity to waive stacked[1] uninsured and underinsured coverage. *Sackett I* held that it did. 919 A.2d at 203. Specifically, § 1738 requires that "[e]ach named insured *purchasing* uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage." 75 Pa.C.S. § 1738(c) (emphasis added). From this, the Supreme Court of Pennsylvania reasoned that, since the Sacketts could not have purchased underinsured motorist coverage for a vehicle they did not yet own, the purchase of that additional insurance only occurred after the acquisition of the third vehicle, triggering the necessity of a new stacking waiver. 919 A.2d at 202–03.
>
> On reargument, *Sackett II* limited this broad holding in light of the Insurance Commissioner's representation that "once policies have been put into place, the Department has not treated the addition of a new vehicle ... as a new purchase of coverage." 940 A.2d at 331. In particular, newly acquired vehicle clauses allow consumers to automatically extend their existing coverage to newly-acquired vehicles. *Id.* Even the Sacketts agreed that such automatic coverage under a newly acquired vehicle clause did not execute a new purchase of coverage under the statute. *Id.* at 332. Thus, the Supreme Court of Pennsylvania held that vehicles temporarily added to a policy under an after-acquired-vehicle provision did not constitute a purchase of coverage and did not require a new uninsured or underinsured motorist stacking waiver. *Id.* at 334. However, the Court also reaffirmed *Sackett I* insofar as to vehicles added to a policy after the expiration of the automatic coverage under a newly-acquired vehicle clause.[2] *Id.*
>
> In arriving at this rule regarding stacking waivers, *Sackett I* relied on the "plain language" of § 1738 which only considers the stacking of uninsured and underinsured benefits and the option to waive such stacking. 919 A.2d at 203; 75 Pa.C.S. § 1738. Moreover, the Supreme Court of Pennsylvania expressly noted that the stacking issue in *Sackett I* presented *402 an entirely different question than a wholesale waiver of UIM benefits, which would fall under the purview of §§ 1731 and 1791. *Sackett I,* 919 A.2d at 198. As such, the Court declined to follow *Smith v. Hartford Ins. Co.,* 849 A.2d 277 (Pa.Super.Ct.2004), which considered, like the instant case, a total waiver of UIM benefits. *Id.*

Id. at 401-02

Finally, Judge Caputo concluded, in summation of a succinct analysis on which this Court could not improve, that:

> Smith is far more analogous to the matter *sub judice*. There, the trial court initially held, *sua sponte,* that increasing a policy's liability coverage triggered a new policy which required a new UIM rejection form. 849 A.2d at 280. . . . .The Superior Court of Pennsylvania rejected this outcome, finding that the language of the MVFRL required exactly the opposite. *Id.* at 281. In particular, requiring a new waiver of UIM benefits was incongruent with § 1791 which provides that, upon providing the appropriate statutory notice, "no other notice or rejection shall be required." The Superior Court held that once UIM benefits are rejected, "that decision carries forward until affirmatively changed." *Id.*

Id. at 402 (concluding that "the holding of Sacket I and II are literally inapplicable to the instant matter" and the "holding of Smith – endorsed by the Pennsylvania Supreme Court in Sacket I – is ultimately compelling").

As Defendants duly note, Plaintiffs cannot maintain a statutory bad faith cause of action where Defendants' denial of coverage was warranted. See Defendants' Brief in Support of CMSJ at 10-11 ("Numerous courts have held that under Pennsylvania law, in the absence of insurance coverage, there can be no bad faith by the insurer as a matter of law.") (citations omitted). Cf. Complaint at ¶ 25 (noting that Defendant communicated to Plaintiff's Counsel by letter dated September 9, 2013, "that the rejection of UM/UIM coverage carried over to the updated policy without a renewed rejection authorization form based on . . . Glazer).

Similarly, as Defendants also duly note, Plaintiffs cannot maintain a claim for violations of the UTPCPL, which provides for protection from fraud and unfair or deceptive business practices where Plaintiffs' Complaint alleges that Defendants' purported "misrepresentations

concerning the automobile insurance coverage" were comprised of their subsequent denial of UIM benefits under their correct interpretation of Pennsylvania law and their correct position as to the continuing effectiveness of Plaintiffs' waiver of UIM benefits. See Defendants' Brief in Support of CMSJ at 11-12 (further noting that the UTPCPL applies to the purchase of goods/services and is inapplicable to the handling of insurance claims/refusals to pay, and that the MVFRL provides its own remedies for denial of insurance benefits). Cf. Complaint at ¶ 82 (listing "representing that [Plaintiffs] were covered insureds and thereafter denying UIM coverage" and additional assertions of "improperly denying UIM coverage" and benefits denial as grounds for UTPCPL claim).

Finally, as this Court will grant Defendants' Cross-Motion for Summary Judgment, the question of whether each of the Defendants is properly named is moot. Compare Defendant's Brief in Support of CMSJ at 12-13 (asserting that Ohio Casualty Insurance Company and the Liberty Mutual Group should be dismissed as they had no contractual relationship with Plaintiffs).

## V. ORDER

**AND NOW,** this 20th day of July, 2015, in consideration of Defendants' Cross-Motion for Summary Judgment (ECF No. 20), briefs and supporting documents, and Plaintiffs' Motion for Summary Judgment (ECF No. 16), briefs and supporting documents, **IT IS HEREBY ORDERED** that Defendants' Cross-Motion for Summary Judgment is **GRANTED** for the reasons set forth above**.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment (ECF No. 16) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment in favor of Defendant and mark this case **CLOSED.**

**IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Plaintiff has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

 

Lisa Pupo Lenihan
United States Magistrate Judge

Cc: Counsel of record